## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
Civil Case No.: 3:25-cv-00571

JONATHAN WARE,

        Plaintiff,                COMPLAINT

v.                              JURY TRIAL DEMANDED

EXPERIAN INFORMATION
SOLUTIONS, INC. and AFFIRM, INC.,

        Defendants.


## I.      INTRODUCTION

1.     This action is brought by Plaintiff Jonathan Ware for actual damages, punitive damages, statutory damages, and civil penalties against Defendants Experian Information Solutions, Inc. and Affirm, Inc., for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the North Carolina Debt Collection Act, N.C.Gen.Stat. § 75-50 *et seq.* ("NCDCA").

2.     Despite being notified several times that Mr. Ware filed a chapter 13 bankruptcy and received his discharge in May 2022, Affirm has refused to report accurate information regarding Mr. Ware's discharged debt, instead claiming that there has been a past due balance still owed after the debt was discharged. Affirm has told Mr. Ware

that he "did a very bad thing," that it would never remove the information from his credit report, and that it would continue to go after him for the discharged debt.

3.      Other creditors heeded the requirements of the FCRA and reported his discharged debts accurately. For unknown reasons, Affirm continued to report inaccurate information to Experian.

4.      Mr. Ware utilized the dispute/reinvestigation process offered by the FCRA by providing to Experian conclusive documents and information showing that his debt to Affirm was discharged. Mr. Ware even included a sworn affidavit. Experian provided the information and documents to Affirm. Affirm and Experian both continue to refuse to correct the objectively inaccurate information on Mr. Ware's credit report.

5.      Mr. Ware has been injured and damaged by each of the Defendants' actions, some of which rise to a violation of federal law, including the FCRA, and some of which rise to a violation of state law, including the NCDCA.

6.      "Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681(a)(1). "Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). "There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with

fairness, impartiality, and a respect for the consumer's right of privacy." 15 U.S.C. § 1681(a)(4).

7. Consumer reporting agencies are to "[…] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information …" 15 U.S.C. § 1681(b).

8. Experian failed to conduct a reasonable investigation into the account appearing on Mr. Ware's credit report that was discharged in bankruptcy over three years ago. This failure has caused significant damage to Plaintiff.

9. Affirm has refused to heed the requirements of the FCRA and NCDCA despite being notified of Mr. Ware's discharge.

10. "One of the primary purposes of the [Bankruptcy Code] is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.'" *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) (*quoting Williams v. U.S. Fidelity & G. Co.*, 236 U.S. 549, 554–55 (1915)). Experian and Affirm have prevented Mr. Ware from enjoying the fresh start promised by the Bankruptcy Code.

11. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with

fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

12. Defendants have each failed in their responsibilities of fairness, impartiality, and a respect for Mr. Ware's right of privacy; they have also failed to satisfy the modest but crucial requirement of accuracy placed upon them by the Fair Credit Reporting Act. Defendants' failures continue to cause damage to Mr. Ware.

## II. JURISDICTION

13. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 15 U.S.C. § 1681p. This Court has jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this district because a substantial portion of the relevant events giving rise to this occurred in or around Charlotte, North Carolina, and Defendants regularly transact business in this judicial district.

## III. PARTIES

### A. Plaintiff Jonathan Ware

15. Plaintiff Jonathan Ware is an individual and natural person who resides in Charlotte, North Carolina.

16. Mr. Ware is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

17. Mr. Ware is a "consumer" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(1).

18. Mr. Ware's former obligation and current alleged obligation to Affirm is a "debt" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(2).

**B. Defendant Experian Information Solutions, Inc.**

19. Defendant Experian Information Solutions, Inc. is a corporation with its with its principal office located at 475 Anton Boulevard, Costa Mesa, California. Experian maintains a registered agent in Raleigh, North Carolina.

20. Experian is a credit reporting agency and data repository that compiles and maintains files on consumers nationwide for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

21. Experian is a "person" as defined by the FCRA, 15 U.S.C. § 1681a(b).

22. Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

**C. Defendant Affirm, Inc.**

23. Defendant Affirm, Inc. is a corporation with its principal office located at 650 California Street, 12th Floor, San Francisco, California.

24. Affirm lends money under a "Buy Now, Pay Later" model and solicits customers during online transactions with businesses from whom Affirm receives a commission.

25. Affirm regularly lends money to residents of North Carolina.

26.     Affirm is engaged in the collection of debts from North Carolina consumers using the mail, telephone, and email.

27.     Affirm engaged, directly or indirectly, in debt collection from consumers.

28.     Affirm is a "debt collector" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(3).

29.     Affirm is a subscriber and user of consumer reports issued by Experian.

30.     Affirm is a "person" as defined by the FCRA, 15 U.S.C. § 1681a(b).

31.     Affirm is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), in that it regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its transactions and/or other experiences with consumers.

32.     Affirm has a symbiotic relationship with Experian such that it furnishes information to Experian regarding its transactions and/or other experiences with consumers, while also purchasing from Experian information about its customers and other consumers.

33.     Affirm was and is a "debt collector" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(3).

34.     "Credit reports," as used and alleged in this pleading, are "consumer reports" as defined by 15 U.S.C. § 1681a(d).

## IV.   FACTUAL ALLEGATIONS

### A.   Affirm and Mr. Ware's Bankruptcy Case

35.   In 2019, Mr. Ware accepted Affirm's offer to loan him money to pay for an online purchase of furniture. The resulting debt/account appeared on Mr. Ware's Experian credit report as "Account Number TOQYXXXX" ("the Debt" or "the Affirm account").

36.   Later, Mr. Ware fell into financial distress and fell behind on many of his financial obligations, including the Debt.

37.   On March 8, 2020, Mr. Ware notified Affirm that he would be filing bankruptcy. Affirm requested information regarding the bankruptcy, which Mr. Ware provided to Affirm via email on March 8 and 12, 2020.

38.   On March 12, 2020, Mr. Ware filed a voluntary petition under chapter 13 of the U.S. Bankruptcy Code ("the Petition") in the United States Bankruptcy Court for the Western District of North Carolina, case number 20-30313. On Schedule E/F of the Petition, Mr. Ware listed Affirm as a creditor, with the address "PO Box 720, San Francisco CA 94104" ("the San Francisco address").

39.   On March 12, 2020, Mr. Ware filed a proposed Chapter 13 Plan, which provided for an estimated payment to nonpriority unsecured creditors (such as Affirm) of 66% of each claim (also known as a 66% dividend). The proposed Chapter 13 Plan was served on Affirm by mail at the San Francisco address.

40.     On March 21, 2020, Mr. Ware's creditors, including Affirm, were served with a "Notice of Chapter 13 Bankruptcy Case," which notified his creditors that he had filed a bankruptcy and provided information regarding Mr. Ware's bankruptcy case, including the jurisdiction, case number, counsel name and contact information, bankruptcy trustee name and contact information, and the clerk's office contact information. The Notice also provided the date, time, and location of the "meeting of creditors." The Notice also provided the May 21, 2020, deadline for creditors to file a proof of claim. The Notice also provided the June 22, 2020, deadline to file a complaint to challenge the dischargeability of any debts.

41.     The Notice of Chapter 13 Bankruptcy Case was served on Affirm by the Bankruptcy Noticing Center[1] by electronic transmission to backoffice@affirm.com.

42.     Upon information and belief, prior to March 21, 2020, Affirm provided the Bankruptcy Noticing Center with the email address backoffice@affirm.com and affirmatively consented to be served by the Bankruptcy Noticing Center at that email address with official bankruptcy notices and filings.

43.     Mr. Ware's bankruptcy was also a matter of public record. As such, it was and still is reflected on Mr. Ware's credit reports published by Experian, Equifax, and TransUnion, each of which maintains services that monitor such public information.

---

[1] The Bankruptcy Noticing Center is part of the United States Federal Court system and provides a service to creditors by managing the agreements between the courts and creditors for creditors to receive notices electronically.

44.     Affirm did not file a proof of claim in Mr. Ware's bankruptcy case.

45.     Affirm did not file a complaint to challenge the dischargeability of the Debt.

46.     Affirm chose not to participate in Mr. Ware's bankruptcy case.

47.     In March 2020, Affirm had updated the "status" of the Debt on Mr. Ware's credit report to be "Discharged through Bankruptcy Chapter 13" with no balance. Affirm furnished this information to Experian at the outset of Mr. Ware's bankruptcy case, years before his discharge was entered.

48.     Affirm has filed proofs of claim in other bankruptcy cases and is familiar with the process. In those proofs of claim, Affirm has provided the San Francisco address as the address to which notices should be sent.

49.     On May 22, 2020, the Bankruptcy Court entered an Order confirming the proposed chapter 13 plan. The Order was served on Affirm by the Bankruptcy Noticing Center by electronic transmission to backoffice@affirm.com.

50.     On November 13, 2020, the chapter 13 Trustee filed his Motion for Determination of Status of Claims in Confirmed Plan and Designation of Minimum Unsecured Percentage Dividend. The Motion stated that the confirmed plan should pay a 100% dividend to the general unsecured creditors. The Motion categorized Affirm as an unsecured creditor and noted that Affirm had not filed a proof of claim. Thus, Affirm's claim amount was listed as $0.00. Several unsecured creditors filed proofs of claim and, thus, were to receive payment in full of their allowed claims. The Motion stated in bolded,

all-caps: "IF YOU ARE A CREDITOR, TAKE NOTICE THAT YOUR RIGHTS MAY BE AFFECTED BY THE FINAL DISPOSITION OF THE TRUSTEE'S MOTION." Finally, the Motion requested the Bankruptcy Court to classify the creditors as listed in the Motion and to designate the dividend to general unsecured creditors.

51.     Included with the Motion was a Notice of Motion explaining that any creditor wishing to object to the motion must file a written response before December 16, 2020, and provided the Clerk of Court's address. Finally, the Notice of Motion stated, "If you or your attorney do not take these steps, the court may decide that you do not oppose the classification and treatment of your claim as reported by the trustee, and grant the motion." The Motion with Notice of Motion were served on Affirm by mail at the San Francisco address.

52.     On November 25, 2020, the chapter 13 trustee filed a Notice to Claimant, directed to and identifying Affirm and the San Francisco address. The Notice stated that the chapter 13 trustee received documentation purporting to change the name and/or mailing address of Affirm. The Notice cited Local Bankruptcy Rule 2002-1(b) and provided what a creditor must do to change its name or mailing address, including the need for Affirm to file a document with the Bankruptcy Court instead of mailing a document to the chapter 13 trustee. The Notice stated that any future attempts by Affirm to file a document through the chapter 13 trustee instead of the Bankruptcy Court would result in the document's disposal without further noticing or processing. Finally, the

Notice provided the purported, new address at 30 Isabella Street, Suite 2, in Pittsburgh, Pennsylvania. The Notice was served on Affirm at both the new 30 Isabella Street address and the San Francisco address.

53.     On January 19, 2021, the Bankruptcy Court entered an Order Granting Motion of Trustee for Determination of Status of Claims in Confirmed Plan and Designation of Minimum Unsecured Percentage Dividend. The Order granted the Trustee's motion and stated that "all claims shall be provided for payment in the debtor's confirmed plan as reported and set forth in the trustee's motion." The Order also stated that "the minimum percentage dividend to be paid to the general unsecured creditors provided for by the plan be set at one hundred percent (100%)."

54.     On March 9, 2022, Mr. Ware filed a Motion to Modify Plan, seeking to pay off the confirmed plan early because the filed, unsecured claims were lower than anticipated. As mentioned earlier, the allowed, unsecured claims would be paid in full. Had Affirm filed a proof of claim, it would have been paid in full as well. The Motion was served on Affirm at the San Francisco address.

55.     On May 4, 2022, the Bankruptcy Court entered an Order Granting Motion to Modify Plan.

56.     On May 25, 2022, the Bankruptcy Court entered an Order of Discharge in favor of Mr. Ware. That same day, the Bankruptcy Noticing Center served the Order of Discharge on Affirm by electronic transmission to backoffice@affirm.com.

**B.**     **Affirm's and Experian's Conduct After the Debt Was Discharged and How They Responded to Mr. Ware's Disputes**

57.     Mr. Ware's bankruptcy discharge status is a matter of public record and reflected on his credit reports published by Experian, Equifax, and TransUnion.

58.     The effect of the Order of Discharge as to the Debt was that the Debt was discharged.

59.     When the Bankruptcy Court entered the Order of Discharge, the debtor-creditor relationship between Mr. Ware and Affirm ended.

60.     At no time since May 25, 2022, has Mr. Ware owed a debt to Affirm.

61.     At no time since May 25, 2022, has Mr. Ware opened any accounts with Affirm.

62.     At no time since May 25, 2022, has Mr. Ware had any personal business relationship with Affirm.

63.     At no time since May 25, 2022, has Affirm had reason to believe that Mr. Ware owed a debt to Affirm.

64.     At no time since May 25, 2022, has Affirm had reason to believe that Mr. Ware was responsible to pay a debt to Affirm.

65.     On July 21, 2022, Mr. Ware called Affirm and spoke with a representative. Mr. Ware told the representative that he had filed bankruptcy, that he had received his discharge, and he wanted to ensure that Affirm's credit reporting was updated and accurate. The representative transferred Mr. Ware to a second representative.

66.     The second representative told Mr. Ware that he "had done a very bad thing." He said that Affirm would continue coming after Mr. Ware and that they would not correct the information on his credit report. Mr. Ware told the second representative that it was unlawful for Affirm to report inaccurately on his credit report.

67.     On March 3, 2023, Affirm furnished information to Experian regarding the Debt, such that Mr. Ware's credit report showed the following:

| | |
|---|---|
| Status | Open. $77 past due as of Mar 2023. |
| Status Update | Mar 2020 |
| Balance | $724 |
| Balance Updated | 03/03/2023 |

In the "Payment History" section, it showed the Debt as "Past due 30 days" for each month from March 2020 through and including March 2023. Under "Payment history guide," it stated, "30 days past due as of Mar 2020 to Mar 2023."

68.     Dated April 25, 2023, Mr. Ware's bankruptcy attorney Kimberly Sheek sent a letter to Affirm identifying Mr. Ware, his bankruptcy case, and the Debt. The letter provided the date on which Mr. Ware had filed a chapter 13 bankruptcy, as well as the date that the Order of Discharge was entered. The letter stated in all-caps, bolded, and underlined that Affirm must cease and desist negative reporting on Mr. Ware's credit report. The letter stated that Affirm must correct its reporting. Enclosed with Ms. Sheek's letter were copies of the Notice of Chapter 13 Bankruptcy Case and Order of Discharge.

69.     On April 30, 2023, Mr. Ware obtained his credit report from Experian. Regarding the Debt, Experian's credit report dated April 30, 2023, showed the following:

Status                Open. $77 past due as of Mar 2023.

Status Update         Mar 2020

Balance               $724

Balance Updated       03/03/2023

In the "Payment History" section, it showed the Debt as "Past due 30 days" for each month from March 2020 through and including March 2023.  Under "Payment history guide," it stated, "30 days past due as of Mar 2020 to Mar 2023." In the "Balance Histories" section, it stated for each month between and including April 2021 and February 2023, the balance was $724.

70.     On October 29, 2023, Mr. Ware obtained his credit report from Experian. Regarding the Debt, Experian's credit report dated October 29, 2023, showed the following:

Status                Open. $77 past due as of Oct 2023.

Status Update         Mar 2020

Balance               $724

Balance Updated       10/03/2023

In the "Payment History" section, it showed the Debt as "Past due 30 days" for each month from March 2020 through and including October 2023.  Under "Payment history

guide," it stated, "30 days past due as of Mar 2020 to Oct 2023." In the "Balance Histories" section, it stated for each month between and including October 2021 and September 2023, the balance was $724.

71.     In May 2024 – two years after his discharge – Mr. Ware attempted to rebuild his credit by applying for credit. He was roundly denied, with potential creditors identifying (as a reason for the denial) recent past due reporting on his report. The only account showing past due payments was the Affirm account.

72.     Mr. Ware was extremely concerned that Affirm's inaccurate reporting would prevent him from obtaining credit in the future, from obtaining the best rate possible to refinance his vehicle, and from being able to secure a chosen rental property.

73.     On May 8, 2024, Mr. Ware obtained his credit report from Experian. Regarding the Debt, Experian's credit report dated May 8, 2024, showed the following:

Status              Open. $77 past due as of Apr 2024.

Status Update       Mar 2020

Balance             $724

Balance Updated     04/03/2024

In the "Payment History" section, it showed the Debt as "Past due 30 days" for each month from March 2020 through and including April 2024.  Under "Payment history guide," it stated, "30 days past due as of Mar 2020 to Apr 2024." In the "Balance Histories"

section, it stated for each month between and including May 2022 and March 2024, the balance was $724.

74. In June 2024, Affirm furnished information to Experian regarding the Debt, stating that there was an "unpaid balance reported as a loss by credit grantor" and "Charge Off/Other Derog" with a $724 balance. Affirm also stated to Experian that the Debt was "charged off" each month from July 2022 through and including June 2024.

75. The Debt was not charged off. "Charged off" meant that the Debt was still owed. However, it was no longer owed, having been discharged over two years prior.

76. On February 21, 2025, Mr. Ware obtained his credit report from Experian. Regarding the Debt, Experian's credit report dated February 21, 2025, showed the following:

Status                 Account charged off. $724 written off. $724 past due as of Feb 2025.

Status Update          June 2022

Balance                $724

Balance Updated        02/03/2025

In the "Payment History" section, it showed the Debt as "Past due 30 days" for each month from March 2020 through and including May 2022, and "Charge off" for each month from June 2022 through and including February 2025. Under "Payment history guide," it stated, "Charge Off as of Jun 2022 to Feb 2025" and "30 days past due as of Mar

2020 to May 2022." In the "Balance Histories" section, it stated for each month between and including February 2023 and January 2025, the balance was $724.

77.     On March 3, 2025, Mr. Ware mailed to Experian a letter disputing the information furnished by Affirm and included a comprehensive package of documents, including his bankruptcy schedules (which identified Affirm as a creditor) and his bankruptcy discharge. In the letter, Mr. Ware identified the Affirm account number, his bankruptcy case number and jurisdiction, and noted the enclosed documents.

78.     After receiving Mr. Ware's dispute, Experian notified Affirm of his dispute and the nature of his dispute via the automated consumer data verification (ACDV) system. Experian provided Mr. Ware's letter and documents to Affirm.

79.     On March 17, 2025, Experian informed Mr. Ware that the results of his dispute were available. The results showed that the only changes Affirm made were to change "Recent Payment," "Monthly Payment," and "Highest Balance" each from zero dollars to a hyphen.

80.     Affirm confirmed and/or furnished the following information:

Status                  Account charged off. $724 written off. $724 past due as of Mar 2025.

Status Update           June 2022

Balance                 $724

Balance Updated         03/03/2025

In the "Payment History" section, it showed the Debt as "Past due 30 days" for each month from March 2020 through and including May 2022, and "Charge off" for each month from June 2022 through and including March 2025. Under "Payment history guide," it stated, "Charge Off as of Jun 2022 to Mar 2025" and "30 days past due as of Mar 2020 to May 2022." In the "Balance Histories" section, it stated for each month between and including March 2023 and February 2025, the balance was $724.

81.    On May 12, 2025, Mr. Ware obtained his credit report from Experian. Regarding the Debt, Experian's credit report dated May 12, 2025, showed the following:

Status              Account charged off. $724 written off. $724 past due as of May
                    2025.

Status Update       June 2022

Balance             $724

Balance Updated     05/03/2025

In the "Payment History" section, it showed the Debt as "Past due 30 days" for each month from March 2020 through and including May 2022, and "Charge off" for each month from June 2022 through and including May 2025. Under "Payment history guide," it stated, "Charge Off as of May 2025 to Jun 2022" and "30 days past due as of May 2022 to Mar 2020." In the "Balance Histories" section, it stated for each month between and including May 2023 and April 2025, the balance was $724.

82.     On May 21, 2025, Mr. Ware mailed to Experian a letter and a sworn affidavit disputing the information furnished by Affirm and included his bankruptcy schedules (which identified Affirm as a creditor) and his bankruptcy discharge.

83.     The letter included:

1. I have enclosed a sworn affidavit regarding this dispute.

2. Please go to the bankruptcy court's website and check the information I provide.

You can access all the public-record documents at https://ecf.ncwb.uscourts.gov/. You can also call the Clerk's office at (704) 350-7500 to confirm my bankruptcy filing and my discharge.

3. You can also see my bankruptcy information contained within my Experian credit report. I do not dispute the bankruptcy – I am relying on that bankruptcy and the discharge I received. Look at my Public Records section – there is the bankruptcy in which I received a discharge of several debts, including the Affirm debt that I am disputing.

4. Look at the several debts on my credit report that are shown as discharged through that Chapter 13 Bankruptcy – Apple Card/GS Bank USA, Best Buy/CBNA, CAP1/WMT, Discover Bank, FNB Omaha, SYNCB/PPC, Three Rivers Federal CU, and Upstart Network Inc. Affirm is the only creditor who refuses to accurately show my debt as having been discharged through that Chapter 13 Bankruptcy.

5. Please read my information below. Please send all this information to Affirm and let it confirm or deny it.

6. On March 12, 2020, I filed my Chapter 13 Bankruptcy, case # 20-30313, in the U.S. Bankruptcy Court for the Western District of North Carolina. This bankruptcy is included in my Experian Credit Report. I included the Affirm debt in my bankruptcy schedules. I have enclosed a copy of those bankruptcy schedules. You can confirm the accuracy of these bankruptcy schedules by viewing them on the public record at https://ecf.ncwb.uscourts.gov/.

7. On May 25, 2022, I received my Bankruptcy discharge. Therefore, on May 25, 2022, my account with Affirm was discharged. I have enclosed a copy of the Order of Discharge. You can confirm the accuracy of the Order of Discharge by viewing them on the public record at https://ecf.ncwb.uscourts.gov/.

8. Affirm Inc has provided inaccurate information, which appears in the "Accounts" section of my Experian Credit Report generated by Experian on February 21, 2025, Report Number 1794-0796-74, with the following "Account Info:"



**AFFIRM INC**
POTENTIALLY NEGATIVE

### Account Info

| | |
|---|---|
| Account Name | AFFIRM INC |
| Account Number | T0QYXXXX |
| Account Type | Unsecured |
| Responsibility | Individual |
| Date Opened | 10/23/2019 |
| Status | Account charged off. $724 written off. $724 past due as of Feb 2025. |
| Status Updated | June 2022 |
| Balance | $724 |
| Balance Updated | 02/03/2025 |
| Recent Payment | - |
| Monthly Payment | - |
| Original Balance | $799 |
| Highest Balance | - |
| Terms | 12 Months |
| On Record Until | Dec 2026 |

9. This Account contains many pieces of inaccurate information: 1) The Account was not "charged off" – it was discharged on May 25, 2022, through my Chapter 13 Bankruptcy. 2) The balance is not $724. It was discharged on May 25, 2022, through my Chapter 13 Bankruptcy, and the balance is $0.00. 3) It is inaccurate where it says "$724 past due as of Feb 2025." It was discharged on May 25, 2022, through my Chapter 13 Bankruptcy – nothing is past due. 4) The payment history is inaccurate. It was discharged on May 25, 2022, through my Chapter 13 Bankruptcy, not Charged Off, as the "CO indicates for every month between June 2022 and February 2025. 5) The payment history is inaccurate where it states that I am 30 days

past due from March 2020 to May 2022. My bankruptcy was filed in March 2020 and I was never late before filing bankruptcy – this account was never late and was included in my Chapter 13 Bankruptcy.

10. Please forward this information to Affirm to confirm that this information is inaccurate.

11. I have enclosed a sworn affidavit to support this dispute.

12. The continued misrepresentation of this account is causing significant harm to my creditworthiness and financial well-being.

84. In the sworn affidavit, Mr. Ware stated, under penalty of perjury:

1. I include the following statements, which I make under oath, in support of my dispute regarding the debt to Affirm Inc., which is inaccurately reported on my credit report, with Account Number TOQY-9E6H.

2. On March 12, 2020, I filed my Chapter 13 Bankruptcy, case # 20-30313, in the U.S. Bankruptcy Court for the Western District of North Carolina. This bankruptcy is included in my Experian Credit Report, and I do not dispute the inclusion of the bankruptcy public record.

3. One of the unsecured debts included in my bankruptcy was a debt to Affirm Inc, with Account Number TOQY-9E6H.

4. On May 25, 2022, I received my Bankruptcy discharge.

5. On May 25, 2022, this account with Affirm was discharged.

6. The information regarding my Bankruptcy case and the inclusion of the Affirm debt

can be verified by viewing the public-record documents at

https://ecf.ncwb.uscourts.gov/, under case #20-30313.

7. Several debts on my credit report are shown as discharged due to my Chapter 13 Bankruptcy – Apple Card/GS Bank USA, Best Buy/CBNA, CAP1/WMT, Discover Bank, FNB Omaha, SYNCB/PPC, Three Rivers Federal CU, and Upstart Network Inc.

8. Affirm is the only creditor who refuses to accurately show my debt as having been discharged through that Chapter 13 Bankruptcy.

9. Affirm Inc has provided inaccurate information, which appears in the "Accounts" section of my Experian Credit Report generated by Experian on February 21, 2025, Report Number 1794-0796-74.

10. This Account contains many pieces of inaccurate information: 1) The Account was not "charged off" – it was discharged on May 25, 2022, through my Chapter 13 Bankruptcy. 2) The balance is not $724. It was discharged on May 25, 2022, through my Chapter 13 Bankruptcy, and the balance is $0.00. 3) It is inaccurate where it says "$724 past due as of Feb 2025." It was discharged on May 25, 2022, through my Chapter 13 Bankruptcy – nothing is past due. 4) The payment history is inaccurate. It was discharged on May 25, 2022, through my Chapter 13 Bankruptcy, not Charged Off, as the "CO indicates for every month between June 2022 and February 2025. 5) The payment history is inaccurate where it states that I am 30 days past due from March 2020 to May 2022. My bankruptcy was filed in March 2020 and I was never late before filing bankruptcy-this account was never late and was included in my Chapter 13 Bankruptcy.

11. The continued misrepresentation of this account is causing significant harm to my creditworthiness and financial well-being.

85.     After receiving Mr. Ware's dispute, Experian notified Affirm of his dispute and the nature of his dispute via the automated consumer data verification (ACDV) system. Experian provided Mr. Ware's letter, sworn affidavit, and documents to Affirm.

86.     On June 9, 2025, Experian notified Mr. Ware that its reinvestigation of his dispute was complete. Regarding Affirm and Mr. Ware's dispute of the information regarding the Debt, Experian stated "The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. Please review your report for the details."

87.     Mr. Ware's credit report generated on June 9, 2025, showed the following:

| Status | Account charged off. $724 written off. $724 past due as of Jun 2025. |
|---|---|
| Status Update | June 2022 |
| Balance | $724 |
| Balance Updated | 06/03/2025 |

88.     In the "Payment History" section, it showed the Debt as "Past due 30 days" for each month from March 2020 through and including May 2022, and "Charge off" for each month from June 2022 through and including June 2025. Under "Payment history guide," it stated, "Charge Off as of Jun 2025 to Jun 2022" and "30 days past due as of May 2022 to Mar 2020." In the "Balance Histories" section, it stated a balance of $724 for each month between and including June 2023 and May 2025.

89.     On June 24, 2025, Mr. Ware called Affirm and spoke with Kiran. Mr. Ware explained that he had filed bankruptcy, that the Affirm Debt was included in the bankruptcy, and he had been trying to get the account updated on his credit report to show that it was discharged. Kiran did not address the credit reporting issue, and, instead, asked Mr. Ware if he wanted to "recover the account" and use it again. Mr. Ware stated that he did not want to recover the account and that he was trying to understand what was going on because Experian provided his dispute to Affirm and Affirm said the information was accurate. Kiran stated that when an account is put in bankruptcy, the account is "locked." Kiran said he would put Mr. Ware on hold so he could find out what he could do. After about two minutes on hold, Kiran came back and said he was still

looking into it and asked if he could have another two minutes. Mr. Ware agreed. After another two minutes, the call was picked up and immediately placed back on hold. This happened a number of times. Eventually, Affirm disconnected the call.

90.     Shortly after that, the same day, Mr. Ware called Affirm again and spoke with Dani. Mr. Ware explained to Affirm that he had filed bankruptcy, that the Affirm Debt was included in the bankruptcy, he had been trying to get the account updated on his credit report to show that it was discharged, and that he was trying to understand what was going on because Experian provided his dispute to Affirm and Affirm said the information was accurate. Dani asked to put Mr. Ware on hold while she looked into his account. When Dani came back on the call, she said that to recover the account so that he could start using it again, she would have to get information from Mr. Ware and start the process of recovering the account. Mr. Ware told Dani that he did not want to recover the account, that he was trying to get the credit reporting corrected, and that Affirm had told Experian that the reporting was accurate. He provided the account number to ensure that Dani was looking at the correct account. Dani confirmed that that was the account she was looking at. She stated that she could see that the account had been placed in bankruptcy, that the petition date was March 12, 2020, and that she also saw that the account was "charged off" on March 14, 2020. She stated that the account was "charged off before the bankruptcy."

91.     Mr. Ware was taken aback by what Dani had told him. He told her that Affirm's reporting did not show the account charged off as of that date. Dani responded by saying that the only things she could see were the petition date on March 12, 2020, and the charge of on March 14, 2020. She said she did not have access to any additional information, and that Affirm was following the guidelines of the credit bureaus. Mr. Ware told Dani that he was trying to get the account reported as being included in the bankruptcy, that the bankruptcy discharge was on May 25, 2022, and that the Affirm account was included. Mr. Ware asked Dani if she could provide any information regarding why it is not being reported that way.

92.     Dani responded that she was able to see the discharge on May 25, 2022, but that the charge off was "before the bankruptcy." She said that if Mr. Ware had any additional information regarding the bankruptcy, he could provide it to Affirm and Affirm would follow the credit bureau guidelines. They ended the call.

93.     Affirm continues to report the Debt inaccurately, and Experian continues to publish the inaccurate information to any person or entity that obtains a copy of Mr. Ware's Experian credit report.

94.     According to Mr. Ware's Experian credit report dated June 9, 2025, Experian has published Mr. Ware's credit report (including the inaccurate information that both Affirm and Experian refuse to correct) to persons or entities hundreds of times.

95.     Mr. Ware's disputes did not involve complex fact-gathering.

96.    Mr. Ware's disputes did not involve in-depth legal analysis.

97.    Mr. Ware's disputes did not implicate unsettled questions of law.

98.    Mr. Ware's disputes did not require credibility determinations.

99.    The inaccuracy furnished by Affirm was objectively and readily verifiable by both Affirm and Experian through both 1) the information and documents supplied by Mr. Ware and 2) a review of public record information that Mr. Ware expressly requested Affirm and Experian review.

100.    Affirm's refusal to correct its reporting about Mr. Ware and Experian's refusal to assure his information was accurate to the maximum possible extent (despite both Defendants having sufficient information to ensure his information was accurate) caused Mr. Ware to suffer severe emotional distress and anxiety regarding his financial future.

101.    Mr. Ware had thought that Affirm and Experian would correct Affirm's inaccurate reporting. He used the process required by the FCRA to notify Experian that the information was inaccurate. Mr. Ware provided information and documents more than sufficient for Experian and Affirm to know that the information was inaccurate.

102.    Affirm and Experian forced Mr. Ware to submit multiple disputes to Experian, requiring him to incur various expenses, including postage for certified mail and notary services.

103.     Having refused to correct the inaccurate information on his credit report, Affirm and Experian have caused Mr. Ware to suffer significant emotional distress and anxiety, and have left him no alternative but to file this complaint to force them to correct his report.

104.     Mr. Ware had been denied credit based on Affirm's inaccurate reporting. After he disputed the Affirm account with Experian and Affirm, Mr. Ware suffered extreme emotional distress and anxiety regarding whether or not Affirm would continue to report inaccurate information and, thus, continue to stand in his way and unilaterally prevent him from obtaining credit in the future.

105.     Mr. Ware demands a jury trial over all claims.

## V.     COUNT I – FAIR CREDIT REPORTING ACT
### (Failure to Reasonably Investigate and Failure to Assure Maximum Possible Accuracy)

106.     Mr. Ware reincorporates herein all previous allegations.

107.     This Count is brought solely against Defendant Experian Information Solutions, Inc.

108.     Pursuant to 15 U.S.C. § 1681i(a)(1)(A), if a consumer disputes any item of information contained in his or her credit report, a consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item

from the file…before the end of the 30-day period beginning on the date on which the agency receives notice of the dispute from the consumer."

109.    Pursuant to 15 U.S.C. § 1681i(a)(4), Experian must "review and consider all relevant information submitted by the consumer" when it conducts any reinvestigation requested by a consumer.

110.    Here, Mr. Ware twice sent a dispute letter along with supporting documentation to Experian requesting that Experian correct the inaccurate Affirm account information contained on his Experian report. With his most recent dispute, Mr. Ware included a sworn affidavit.

111.    Experian failed to conduct a reasonable investigation of the inaccurate information in Mr. Ware's Experian credit file regarding the Affirm account after receiving actual notice of the inaccuracies with supporting documentation and sworn testimony showing that the Affirm account was reported inaccurately.

112.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of information concerning Mr. Ware in the preparation and publication of Mr. Ware's consumer reports.

113.    Experian's violations of Section 1681i include, but not limited to:

    A.  failing to (i) conduct a reasonable reinvestigation of Mr. Ware's dispute concerning all items of information he disputed, and (ii) record the correct statuses of the disputed information or delete the disputed information from his credit file, in violation of § 1681i(a)(1)(A);

B. failing to correct the inaccurate information in Mr. Ware's credit file within the 30-day period of receiving his disputes, in violation of § 1681i(a)(1)(A);

C. failing to review and consider all relevant information submitted by Mr. Ware concerning his disputes, in violation of § 1681i(a)(4); and

D. failing to properly modify and correct items of disputed information in Mr. Ware's credit file that Experian could find to be inaccurate upon a lawful reinvestigation, in violation of § 1681i(a)(5).

WHEREFORE, Plaintiff Jonathan Ware requests that judgment be entered in his favor and against Defendant Experian Information Solutions, Inc. for:

A. Actual damages, damages of not less than $100 and not more than $1,000, and punitive damages, pursuant to 15 U.S.C. § 1681n if Experian is found to have committed willful or reckless conduct;

B. Actual damages, pursuant to 15 U.S.C. § 1681o, if Experian is found to have committed negligent conduct;

C. Costs and attorney fees, pursuant to 15 U.S.C §§ 1681n and/or 1681o; and

D. Such other relief this Court may deem to be just and proper.

## VI.    COUNT II – FAIR CREDIT REPORTING ACT
### (Duty to Provide Accurate Information)

114.    Mr. Ware reincorporates herein all previous allegations.

115.    This Count is brought solely against Defendant Affirm, Inc.

116.    Affirm's violations of Section 1681s-2(b) include, but are not limited to:

A. willfully and negligently failing to conduct an investigation of the inaccurate information that Mr. Ware disputed upon receiving notice of

the dispute of the consumer from Experian, in violation of 15 U.S.C. § 1681s-2(b)(1)(A);

B. willfully and negligently failing to review all relevant information concerning Mr. Ware's account provided to it by Experian, in violation of 15 U.S.C. § 1681s-2(b)(1)(B);

C. willfully and negligently failing to report the accurate status of the accurate information to Experian, in violation of 15 U.S.C. § 1681s-2(b)(1)(C);

D. willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by Experian concerning the inaccurate information disputed by Mr. Ware;

E. willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Mr. Ware to credit reporting agencies and other entities despite knowing that said information was inaccurate; and

F. willfully and negligently failing to comply with the requirements imposed on Affirm pursuant to 15 U.S.C. §1681s-2.

WHEREFORE, Plaintiff Jonathan Ware requests that judgment be entered in his

favor and against Defendant Affirm, Inc. for:

A. Actual damages, damages of not less than $100 and not more than $1,000, and punitive damages, pursuant to 15 U.S.C. § 1681n if Affirm is found to have committed willful or reckless conduct;

B. Actual damages, pursuant to 15 U.S.C. § 1681o, if Affirm is found to have committed negligent conduct;

C. Costs and attorney fees, pursuant to 15 U.S.C §§ 1681n and/or 1681o; and

D. Such other relief this Court may deem to be just and proper.

## VII.     COUNT III – NORTH CAROLINA DEBT COLLECTION ACT

117.     Mr. Ware reincorporates herein all previous allegations.

118.     This Count is brought solely against Defendant Affirm, Inc.

119.     Affirm's violations of the NCDCA include, but are not limited to:

A. Attempting to collect any debt by means of any unfair threat, coercion, or attempt to coerce, in violation of N.C.Gen.Stat. § 75-51;

B. Falsely accusing or threatening to accuse any person of fraud or any crime, or of any conduct that would tend to cause disgrace, contempt or ridicule, in violation of N.C.Gen.Stat. § 75-51(2);

C. Making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt, in violation of N.C.Gen.Stat. § 75-51(3);

D. Threatening to take any action not permitted by law, in violation of N.C.Gen.Stat. § 75-51(8);

E. Attempting to collect a debt by any fraudulent, deceptive, or misleading representation, in violation of N.C.Gen.Stat. § 75-54;

F. Falsely representing the character, extent, or amount of a debt against a consumer, in violation of N.C.Gen.Stat. § 75-54(4); and

G. Collecting or attempting to collect any debt by use of any unconscionable means, in violation of N.C.Gen.Stat. § 75-55.

WHEREFORE, Plaintiff Jonathan Ware requests that judgment be entered in his favor and against Defendant Affirm, Inc. for:

A.     Actual damages, pursuant to N.C.Gen.Stat. § 75-56(b)(i) and trebled pursuant to N.C.Gen.Stat. § 75-16;

B.     Civil penalties, pursuant to N.C.Gen.Stat. § 75-56(b)(ii);

C.    Costs and attorney fees, pursuant to N.C.Gen.Stat. § 75-16.1; and

D.    Such other relief this Court may deem to be just and proper.

July 31, 2025                          /s/ Craig M. Shapiro
                                       Craig M. Shapiro (State Bar No. 48887)
                                       SHAPIRO LAW OFFICE, PLLC
                                       644 Holly Springs Road, Suite 195
                                       Holly Springs, North Carolina 27540
                                       919.480.8885
                                       craig@shapirolawofficepllc.com

                                       ATTORNEY FOR PLAINTIFF